My name is Jeremy Thompson. I am here on behalf of the appellant, David Troy. Despite a 121 to 151-month guidelines range, the District Court denied Mr. Troy's First Step Act motion and left his 276-month sentence in place. That decision was neither procedurally nor substantively reasonable. I'd like to begin with the substantive reasonableness argument given this Court's recent order directing the parties to file supplemental memoranda regarding the impact of Concepcion, because I think that informs both in large part the substantive reasonableness argument but also does have some impact on the procedural reasonableness argument. The parties agreed below and agreed before this Court that the 121 to 151-month guideline range was what was applicable under this Court's decision in Chambers and the retroactive career offender guideline range. The District Court's order denying relief was not substantively reasonable for three main reasons. One, the District Court could not rely alone on the original factors taken into consideration at sentencing this Court's decision in Swain, makes that clear, because the guideline range had significantly changed and the District Court needed to justify its decision to leave a 276-month sentence in place that was within the original guideline range given the new 121 to 151-month guideline range. Second, the District Court must have distinguished the case from guidelines, from the run-of-the-mill guidelines range and guidelines case, and explain why this case was more significantly different and was not a run-of-the-mill guidelines case in order to justify its sentence. On that point in particular, I'd like to point out that the appellant below argued at page 136 of the joint appendix that if you look at the counterfactual situation where you do the guidelines for attempted murder, the sentencing range ends up not at 121 to 151 but ends up at 188 to 235. The District Court's explanation when it said this was very nearly a murder case and that the six-level enhancement for bodily injury doesn't account for it, that is at its best point when it tries to differentiate the case from the guidelines. It doesn't take into account the attempted murder guideline. It doesn't engage with the defendant's argument that attempted murder still would have a lesser guideline range. The District Court said nothing about that in its argument. Sure, if it is attempted murder and the victim very nearly died, the guideline range is still significantly below the sentence that the District Court ultimately left in place. And finally, the District Court failed to give appropriate consideration to the remedial purpose of the First Step Act. It's particularly important in this case because the original guideline range of 235 to 293 months was driven by Mr. Troy's drug offense. His career offender enhancement was solely due to his drug charge. So the significant sentence that he ended up looking at was from his drug offense and from the fact that he had a prior drug offense. And the First Step Act was looking to alleviate those harsh sentences that associated with drug offenses. I want to make sure I understand that part of your argument. When the guideline range was recalculated in this case, the entire decrease is a result of correcting for the Simmons error, right? Yes. Okay. So that does seem different from Swain to me because I thought in Swain there the difference had a lot to do with the actual new crack quantities in the Fair Sentencing Act. And there we were able to say, look, if you don't reduce it, you're kind of at odds with Congress's purpose in lowering those crack quantities. Whereas you don't really have that here because the reason it went down was because of the Simmons error, which is incredibly important but is not part of the First Step Act, Fair Sentencing Act. But you're saying, no, no, it all implicates the same policy because the Simmons error in turn traces back to a drug conviction in North Carolina? Yes, that's part of it. And also the fact that the underlying career offender guideline range was driven solely by the drug offense, by Mr. Troy's federal drug offense. But also, as this court has recognized repeatedly, first and foremost in Worsing but also in Chambers, one of the main reasons the Congress passed the First Step Act was to provide relief for defendants who were not eligible for Fair Sentencing Act relief, in large part because they were career offenders. So if the point of the First Step Act is to get the Fair Sentencing Act to individuals who were designated career offenders, then it's also part of the First Step Act. Oh, wait. So it's part of the First Step Act. Okay. Because everything you just said, I understand. We've set it in opinions. I was on the panel in Chambers. I totally understand that as a matter of just what is the right way to think about this. But I do have trouble reconciling it with Concepcion, which seems to me to say something different, which is that for benchmark purposes, you don't consider any of that. You may consider it after you've set the benchmark as a reason to grant a reduction. But you read Concepcion differently. Well, yes. And I believe the government does as well in terms of calculating the benchmark guideline rate. Concepcion was quite clear to use the word non-retroactive repeatedly, both in Footnote 6 and in Footnote 8. And Concepcion, I think, fully accords with Chambers and says that retroactive errors must be corrected. That is the whole point of the Fair Sentencing Act. But Mr. Thompson, if I may, when you look at that Footnote 6, it says that the district court cannot recalculate the benchmark guidelines range in any way other than to reflect the application of the Fair Sentencing Act. So, I mean, by saying in any other way, they seem to be absolutely closing the door on what you're saying. I understand you seem to be arguing the logic behind the First Step Act. And you're saying Congress wanted to help these people who were getting trapped in these career and fender enhancements. And I understand that. But we've got this language from the Supreme Court that says courts can't recalculate the guidelines in any other way than to reflect application of the Fair Sentencing Act. So it seems to me we've got to find language in the Act itself that points to the kind of relief that you're asking for. In other words, that you can still recalculate the guidelines if you have a prior drug conviction. I mean, I see the logic of what you're saying. I just don't see the authority for it. Well, Your Honor, I think there are kind of two ways to look at Concepcion and to look at Footnote 6 as it relates to Chambers. And Chambers is holding about retroactive guideline ranges must be corrected. Either it says nothing about Chambers because the specific issue in Chambers was not before the Supreme Court Concepcion. And so it says nothing about retroactive. It says nothing about other retroactive errors. I agree that that is their intent. That is what they are attempting to do in the decision. But I think the Supreme Court didn't put in anything regarding other retroactive errors in its decision because it didn't need to. It didn't have to. I think that was implied by its use of non-retroactive when describing things that the courts may consider. You know, the Footnote 6, the final sentence of Footnote 6, says the district court may then consider post-sentencing conduct or non-retroactive changes in selecting or rejecting an appropriate sentence. Why would the Supreme Court have used the word non-retroactive guidelines changes? They would have just said guidelines changes. Non-retroactive specifies and clears. retroactive changes in deciding whether or not to grant a reduction. The dispute was over whether at that point the district court could look at non-retroactive changes. And so the court is clarifying, look, nothing but the actual drug quantity differences and setting the benchmark. But after that, non-retroactive as well as sort of almost in brackets as well as retroactive changes may be taken into effect because that's what was contested. But I think looking at and looking and saying non-retroactive and retroactive guidelines errors when you look at Footnote 6 leads to the problem that I pointed out in the supplemental briefing, which is the other retroactive amendments that, in particular, regarding the drug levels that the Sentencing Commission has enacted other than the Fair Sentencing Act changes. After the Fair Sentencing Act retroactive changes, there's another round of two level reductions. I believe it's Amendment 768. I'll get the exact one momentarily. But there's a second round of retroactive guidelines changes by the Sentencing Commission. And so if you read this literally as the only thing that you can take into consideration that you must fix is the Fair Sentencing Act and the Fair Sentencing Act's amendments, then you cannot recalculate the guideline range in light of the subsequent two level reduction that the Sentencing Commission enacted. And that gets grouped in with the second of the final sentence of Footnote 6, which means that if a district court refuses to reduce the guideline range further beyond the Fair Sentencing Act, reads it literally and says, I cannot do anything other than the Fair Sentencing Act. Then if the district court denies the motion, a defendant then has a right under USSC 1.1.10 to file a second motion for a reduction in sentence based on the retroactive amendment that he didn't get the benefit of. What about Footnote 8? The First Step Act does not require a district court to recalculate a movements guidelines in any respect other than applying the first the Fair Sentencing Act. And then it refers back to C Note 6. So I look at that as restating what is in Footnote 6. But it seems to me that the problems that you saw in Footnote 6 are not replicated in Footnote 8. That it doesn't have this language that you relied on about retroactive. It does. The first sentence is the dissent contends that permitting a district court to consider non-retroactive guidelines amendments will create a disparity between First Step Act eligible movements and other defendants. So it's talking again about non-retroactive guidelines amendments in Footnote 8, just like it is in Footnote 6. But so, I mean, we never want to assume that the dissent is properly reading the majority opinion. There's all kinds of stuff going on. But I thought the way the dissent described what was going on in these footnotes seemed pretty sensible, a sensible reading. The court properly notes that district courts must begin a First Step Act proceeding by calculating the new guidelines range based solely on changes to the crack cocaine sentencing ranges. Isn't that basically what they're saying? Like, look, you can look at anything that has to do with changes to the crack cocaine sentencing ranges, but not things like our decision in Simmons. I don't—well, and again, Your Honor, like you're saying, that is the dissent reading the majority opinion. But I don't—I think the dissent also talks about, you know—the dissent also talks about non-retroactive changes. You know, the dissent talks about non-retroactive changes to the guideline range based on career offender, and I see I'm out of time, if I may finish responding. I think the dissent is drawing on the same differences between retroactive and non-retroactive changes that the majority opinion is addressing. And, you know, obviously I wish the majority opinion were clearer on the distinction between non-retroactive and retroactive changes. But certainly we would submit that footnote 6 doesn't close the door to chambers. It does not abrogate chambers. And with that, I'll reserve the rest of my time. May it please the Court. My name is Amy Bauer, and I represent the United States. The district court did not abuse its discretion when it did not reduce Mr. Troy's sentence under the First Step Act because its decision was both procedurally and substantively reasonable. As a result, the district court's order should be affirmed. And, Your Honors, I would like to start my argument with the questions you raised to the appellant as it relates to Conception's effect on this court's precedent, and specifically the chamber's opinion, whether retroactive and or non-retroactive, if there's a difference based on footnote 6 and then Conception holding. And I would note, for Your Honors, that the government took the position it took in its supplemental brief in this case, that the guidelines were appropriately recalculated by the district court based on this court's precedent in chambers because of its precedent in chambers. It's for this court to decide whether its chamber's precedent is no longer good law based on Conception. And I would represent, Your Honors, that in any other circuit around the country, the Department of Justice takes the position that the benchmark guidelines as referenced in footnote 6. But I don't understand that at all. I mean, Conception means whatever it means. What is the government's position as to what Concepcion requires? When the district court calculates the benchmark, what is the district court supposed to do in a 404B proceeding under Concepcion? Yes, Your Honor, and I believe when you read Concepcion, what a district court is supposed to do is to look at how the guidelines would be different, as if the Fair Sentencing Act were in place in the first step that gave that retroactive effect. So a benchmark guidelines, as Your Honor appropriately noted in the beginning, the appellant's benchmark guidelines did not change in this case. His guidelines were driven by the cocaine, not the crack, which created the disparity that the Fair Sentencing Act was aimed to resolve. And so the government's position and the reason I believe the retroactive question is important is because this court's precedent in chambers took the position that retroactive changes in the law, so in this case a Simmons error, had to be accounted by a district court when it was recalculating the guidelines in a first step act resentencing. Do you think, does the government think that can be reconciled with Concepcion or not? I don't understand the idea that the government's position would be based on our circuit precedent if there is intervening Supreme Court precedent that the government thinks renders our circuit precedent superseded. Your Honor, the government would argue that it can't be reconciled with Concepcion if you read it literally in the majority's opinion. How would you read it? I think you would read it that when you recalculate the benchmark guidelines that you only can look at the retroactive changes that the Fair Sentencing Act would have implemented. And here there were no, as the amended sentencing report pointed, there were no changes to Mr. Troy's guidelines when you took into the retroactive considerations of the Fair Sentencing Act. And so then though, I think how you would read Concepcion, Your Honors, is it clearly states that a district court, once those benchmark guidelines are calculated, may consider intervening changes in the law. So in this case, a retroactive change or a non-retroactive change and exercising its discretion on whether or not to reduce a sentence under the First Step Act. But this isn't the argument you made in your brief, right? Yes, Your Honor, it's not. And Your Honor, I wouldn't know. No, it's not. I'm correct. You didn't make it in your brief. I did not, Your Honor. And we did not make it in our brief based on this circuit's precedent and chambers. But if we said, I mean, I will let this drop in a minute. We know our precedent and chambers. If we send you a letter saying, hey, does Concepcion have any bearing on this? We are actually looking for the government to tell us as we read Concepcion, is your precedent still good or not? And I am somewhat confused that, I mean, I thought you were conceding this in your brief. Your Honor, we conceded it based on chambers. And, you know, I certainly understand what Your Honors are saying is that you asked us to not make the concession if we didn't agree that chambers was still good law. But the Department of Justice takes the position that in any other circuit without the chamber's opinion, that the benchmark guidelines calculation would only be looking at any changes that were made retroactive by the First Step Act, the Fair Sentencing Act. So, OK, I don't have your response in front of me, but did you say that in the response? I thought you just straight up agreed with them. Your Honor, and we did agree as Mr. Troy's counsel argued that because of chambers and this court's precedent, that a retroactive change in the law would need to be considered when recalculating the benchmark guidelines in a First Step Act proceeding. No, it's not what it says. It says, first of all, the district court correctly took retroactive changes in the law into account. And then it says Concepcion doesn't address the question. It doesn't address whether a district court must account for retroactive changes in intervening case law. I don't, I mean, I understand what your position is today, but it just would have been helpful to have that in advance. Yes, Your Honor, and I certainly understand. And so if Concepcion, and I think you referenced the dissent earlier when the appellant was making his argument that you just look at the benchmark guidelines and then you can go further and decide, a district court can go further and decide whether in its discretion, it feels like a sentence should be reduced based on intervening changes in the law. And Your Honor, I would move to the next point of my argument is. Well, before you do that, can you give us your views, the United States views on whether you waive this argument that you're now making? Your Honor, obviously, it's been raised in the briefs. And I think that, you know. I thought my colleague just looked at the brief and didn't see it. So maybe you could. Oh, whether I raise the argument that, I'm sorry, I apologize. I thought you meant whether I raise the argument to change, you know, the position I'm making today. I apologize, Judge Motz. You know, I think that it is this court today, in ordering oral argument in this case, we have to look at what effect Concepcion may have on this court's precedent. I think we can all agree, had Concepcion not been decided, Chambers would be what we are looking at today. Did I ask you to address this in light of Concepcion? I'm sorry, can you repeat the question? What was the question that we asked you to address? You asked us to address whether Concepcion's holding has an effect on the benchmark guide. And so you're now saying to us, yes, it does. But you answered us, no, it doesn't. So have you waived that argument? Your Honor, I think that, you know, from a waiver perspective, it would be for this court to decide. And certainly we cannot have precedent that is in contradiction of Supreme Court precedent. But I would raise the point that if I have waived the argument, and if this court determines that Concepcion is not in conflict with the Chamber's decision, that retroactive decisions in the law must be considered. Do we even have to reach the question? At least in front of us, we have two parties, at least on the briefs, parties came to the same answer. Concepcion does not affect this. The benchmark was correctly decided in this case. Can we just say, like, look, parties agree this is the correct benchmark? Your Honor, I think you could, based on the circuit's precedent. And then we would go to the next question. Not based on the circuit's precedent. The parties in their briefs agree that under Concepcion, this is the correct benchmark. Correct. And so if we move on to the next analysis, it's whether the decision was procedurally and substantively reasonable to retain the original sentence in light of what the recalculated guidelines were. And it's the government's position, Your Honor, that it was both procedurally and substantively reasonable. Your Honor, as you – Okay. I just want to be sure I understand so that we can take what you've said in your brief. We don't have to take – we don't have any obligation to read the law ourselves, notwithstanding your concession. No, Your Honor, I do think there is an obligation. You didn't tell us about that first time when my colleague asked you either, right? Yes. Do we have some sort of independent obligation to find out what Concepcion does or doesn't do? Your Honor, I would ask for – I'm not quite prepared to address that based on the circuit's precedent today. But what I would like to make sure that I do raise is if this court finds it is not obligated to address that and then the issue has been waived based on the party's agreement, we still look to see whether the district court's order was procedurally and substantively reasonable. And here, from a procedural reasonableness perspective, it was. If we assume the guidelines were properly corrected, then a district court must analyze the 3553A factors and consider Mr. Choi's – The bigger problem is with substantive reasonableness, don't you? Yes, I agree, Your Honor. And then as Judge Harris mentioned, the Swain opinion, that really focused on the remedial context of the First Step Act and retaining a sentence with that large of a variance was substantively unreasonable. I would note that the district court in this case did put the parties on notice that it was considering an upward variance. And it allowed further briefing on the issue. And then in its order, it addressed specifically why it felt like retaining the original sentence was appropriate in light of Mr. Choi's specific individualized characteristics. And I think what conception does is it directs that a district court has great discretion to choose whether to reduce or not reduce a sentence under the First Step Act. And here, the remedial purpose of the First Step Act was to reduce the disparity between crack cocaine and powder cocaine offenses. And here, there was no reduction in Mr. Choi's guidelines under the First Step Act. And so when the district court was reconsidering – was considering his arguments, he looked at the 3553A factors. It's the government's position that Mr. Choi did not introduce any evidence that was not available to the district court at the original sentencing. But it did consider the non-frivolous arguments that were raised by Mr. Choi. And then when it fashioned and it determined not to reduce the sentence, it was substantively reasonable. And, you know, as this circuit's precedent does establish, you know, what has to be done in a district court level is to give this court an opportunity to conduct a meaningful appellate review. And when we look at the joint appendix in this case, beginning on page 143, the district court listed the 12 arguments that Mr. Choi had raised to support his position why a sentence reduction was appropriate. And then it also specifically mentioned that it considered the age of his offense, that he was 17 at the time of his North Carolina conviction, and said that he did not – the district court did not find that persuasive. And then it further went on, as this court's well aware, the nature and circumstances of the offense is one of the 3553A factors that must be considered. And it spent four – the district court spent four pages addressing why a reduced sentence was not appropriate. And so we believe when you look at the record as a whole, that the district court has given this court the opportunity to conduct a meaningful appellate review to make a determination that its sentence was substantively reasonable. Judge Keenan, do you have any questions? No, thank you. Thank you, Your Honor. Thank you. It was Amendment 782. That was the second retroactive amendment. And I would note that both the government and I sided to the Eighth Circuit's decision in Shepard, which said that the district court, which is post-concepcion, said the district court properly disregarded or properly did not incorporate non-retroactive changes, but properly included 782's retroactive change in calculating guideline range. And that was a case that was specifically concerned about how the guidelines were properly calculated. The Third Circuit has since then, in the Shields case, I think, come out the other way. I feel like the case law in this is a bit emerging and mixed. And I think it will continue to be seen. I'm not certain off the top of my head if the Third Circuit – and this only does pertain, I think, to the substantive reasonableness side of things – if the Third Circuit is one of the circuits that has applied substantive and procedural reasonableness to First Step Act claims, which I do believe is required by concepcion. But in looking at the – maybe a different way to look at what the First Step Act did in incorporating the Fair Sentencing Act. The First Step Act, the text, as Your Honor is asking about the text, how do we ground this in the text of the First Step Act? The First Step Act tells the district court to proceed as if the Fair Sentencing Act was in place. That requires the district court to go back in time and pretend like it's back in 2011 or 2012 or whatever for the Fair Sentencing Act to change. I understand that. Why doesn't it just tell the district court you're in whatever year you're in? We're having a lot of time trouble with this. You're in whatever year it is currently, but act like the Fair Sentencing Act. If – I wish the First Step Act were better written. You know, I mean, this court found in Chambers that the 3553A factors applied to First Step Act decisions, and that's not in the text of the First Step Act either. The Supreme Court in concepcion found that the First Step Act requires that you apply the Fair – But that's not in the text of the First Step Act either, right? That is something that the Supreme Court decided was congressional intent, but that's not in the text of the First Step Act either. Well, the First Step Act was a product of the Fair Sentencing Act, right? Yes. A follow-up. A fix. So that's a fair – Yes. And so I think by putting yourself in the position district court, putting yourself in the position as if the Fair Sentencing Act had been in place at the time when you originally imposed a sentence, you're looking at what was retroactively the law at the time of the sentencing. And retroactively, Mr. Troy's career offender guideline error was an error at the time. That's what the difference between retroactive and non-retroactive was. So if the district court put itself in the position as if the Fair Sentencing Act applied when it originally imposed a sentence, Mr. Troy's career offender designation was also unlawful at that time. And so that's the jurisdictional hook that this court can use to say the First Step Act makes the Fair Sentencing Act and makes all retroactive changes apply at the time the district court makes its decision. I do believe, Your Honor, based – and obviously I began my argument by saying government agree. I believe this court can write this decision without having to get into this morass. Given that the government agreed in its briefing before this court, this court can simply say the parties agree. Based on that stipulation, you know, 121 to 151 months is the appropriate resolution. We can leave what Concepcion does to Chambers for another day because it hasn't been argued, hasn't been presented. No party has argued before this court except recently today that Concepcion changed Chambers or abrogated Chambers in any way. And so this court can proceed from the assumption that 121 to 151 is appropriate given the government's concession and then review that decision for substantive reasonableness. And we believe, given what this court did in Swain and the factors that this court found particularly relevant in Swain, about not giving credence to the First Step Act for medial purposes, about not differentiating the case, taking just the original sentencing factors that were taken into consideration. Counsel, can I just ask you about that, sort of assuming that this is now a massive variance, just assume for purposes of this question, that's the world we're in. I mean, I thought the district court did a pretty good job. I understand this is substantive, not procedural, but we do look at how the district court justified it. It's not, given that what has dropped the guideline range is a Simmons error, and again, understanding the importance of career offender designation and the Simmons issue, it's not, I'm not sure it's unreasonable for a court to say, look, based on what happened here, the attempted murder and everything, the fact that it turns out that because you didn't serve the right amount of time on that drug offense from a million years ago, you're no longer a career offender, it just doesn't change the way I look at the 35-53 factors here. You did everything I thought you did. Nothing about your conduct has changed, not the past offenses, not the current offenses. The only thing that's changed is whether the amount of time you did on this North Carolina drug conviction catapulted you into career offender status, but everything you did is the same, and so I'm not changing my mind under 35-53A. How is that substantively unreasonable? Your Honor, I see I'm out of time, if I may respond. This court was presented with that almost exact same factual scenario in Swain. Except for I do think it's a key difference that there the range went way down because the drug quantities changed exactly as anticipated by the First Step Act, the Fair Sentencing Act, and we said that was the main problem. Like, you were just running headlong into Congress's intent that because your quantity went down, you're not supposed to be punished as severely, but we don't have that here. But what we do have is we have a situation where a district court not only left a variance. Again, the justification needs to be the more you go above the guideline range, the better the justification has to be. And here, the justification is what I took into account if the original sentencing still stands. All right, that's not sufficient. And then when you look at the significant degree to which the district court upward buried, because you have to go all the way up to the pre-departure range, because the judge says, I would have imposed the same sentence on anybody who had committed the same conduct. That means that you're looking at almost 400 months as a benchmark for an attempted murder offense. That's the import of the district court's finding, is that I would have given anybody this sentence, and you only get to 276 because you cooperated against corrupt cops. And so he's saying any attempted murder is 400 months, and that's not what the guidelines say. The guidelines start attempted murder at 33, and you can get up to 37 for the offense conduct itself. So the district court not only had to justify going to 276, the district court had to justify going all the way up to 400 and then back down to 276 based on an attempted murder. And the district court makes no effort to say why this case is different, more distinctive than any attempted murder, because any attempted murder by its very nature is going to have terrible factual facts where someone almost died. And those defendants aren't sentenced to 400 months in prison, and they're not even sentenced to 276 months in prison. They're sentenced to 15 years in prison. That's not the sentence he was serving. No, I'm sorry. Judge Keenan, do you have questions? No, thanks. Thank you very much. Thank you. Thank both of you for helping us today. We're sorry we can't come down and shake hands. We wish you the best.
judges: Pamela A. Harris, Diana Gribbon Motz, Barbara Milano Keenan